

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| DEVON SMITH, *individually and on behalf of all others similarly situated*, Plaintiff, | § § § § | |
| vs. | § | CIVIL ACTION NO. 3:18-2354-MGL |
| GENERAL INFORMATION SOLUTIONS, LLC, Defendant. | § § § § | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND DISMISSING THE ACTION WITHOUT PREJUDICE**

## I. INTRODUCTION

Plaintiff Devon Smith (Smith) filed this putative class action suit against Defendant General Information Solutions, LLC (GIS), alleging violations of the Fair Credit Reporting Act (FCRA),15 U.S.C. § 1681. The Court has jurisdiction over the matter under 28 U.S.C. § 1331.

Pending before the Court is GIS's motion to compel arbitration. Having considered the motion, Smith's response, GIS's reply, the parties' response to the Court's interrogatories, the record, and the relevant law, the Court will grant the motion to compel arbitration and dismiss Smith's complaint without prejudice.

## II. FACTUAL AND PROCEDURAL HISTORY

Smith applied for a position with TruGreen Lawncare (TruGreen or the Company) on or about March 2016. Amended Complaint ¶ 16. "GIS acts on behalf of TruGreen to apply pre-defined hiring criteria and assign a grade to applicants, such as [Smith], which determines and adjudicates whether the applicant is ineligible for employment." *Id*. 31.

Smith "was interviewed and offered a job with TruGreen contingent on completing certain employment forms, a motor vehicle registration check, his background check, and drug testing." *Id*. ¶ 19. "During the interview process, and on the additional forms, [Smith] disclosed that he had a past [Operating a Vehicle Impaired charge], and TruGreen told him it was not a problem and would not be a bar to employment, so long as he wrote everything down accurately in the application forms." *Id*. "After TruGreen informed [Smith] of its intent to hire him, [he] ceased his job search. He did not fill out any additional applications with potential employers and he stopped sending out his resume." *Id*. ¶ 20. Smith "subsequently took and passed the required drug screening." *Id*. ¶ 21.

According to GIS, however, "[t]he information in . . . Smith's background check contained information that would disqualify him from employment based on criteria established by TruGreen." GIS Vice President's Declaration ¶ 7. Consequently, "[o]n March 25, 2016, GIS, on behalf of TruGreen, sent [Smith] an adverse action letter informing him that TruGreen had elected not to extend him an offer of employment." *Id*. 10.

Smith "subsequently filed a lawsuit against TruGreen for FCRA violations in the United States District Court for the Southern District of Ohio styled as *Smith v. TruGreen, Inc., et al*., Case No. 2:17-cv-00462. The case has since been dismissed with prejudice." Amended Complaint ¶ 23.

"During the pendency of the case, . . . [Smith] procured letters written by GIS regarding his background check that were utilized to make the decision not to offer him the TruGreen job." *Id*.

When Smith applied to work with TruGreen, he consented to be bound to the following requirements of the TruGreen 2014 We Listen Dispute Resolution Plan (Agreement):

> The Plan includes a mutual agreement to arbitrate my individual covered Disputes which is the exclusive, final and binding remedy for both the Company and me and includes a class action waiver.

Agreement ¶ 1.

> The Company and I mutually consent to resolution under the Plan and to final and binding arbitration of all Disputes, including, but not limited to, any preexisting, past, present or future Disputes, which arise out of or are related to my application for employment, my current or former employment, the termination of my employment, or reemployment, on-duty or off-duty, in or outside the workplace, that I may have against any of the following: (I) the Company; (ii) its current and former officers, directors, employees, or agents in their capacity as such or otherwise; (iii) the Company's parent, subsidiary, partner and affiliated entities; and/or (iv) all successors and assigns of any of them, or that the Company may have against me. Further, Disputes include any claim or controversy regarding the Plan itself or its interpretation, applicability, unconscionability, arbitrability, enforceability or formation[.]

*Id.* 3.

> I hereby waive any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action. . . . I also hereby waive any right for any dispute to be brought, heard, decided, or arbitrated as a representative action.

*Id.* 10 (emphasis omitted).

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any Dispute relating to the interpretation, construction, applicability, unconscionability, arbitrability, enforceability or formation of the [Agreement] including, but not limited to, any claim that all or any part of the [Agreement] is void or voidable.

*Id.* 15(b).

3

Smith filed this action in the Southern District of Ohio, which transferred it to this Court. GIS then filed its motion to compel arbitration, Smith filed his response, and GIS filed its reply. The parties subsequently filed a response to the Court's interrogatories. The Court, having been fully briefed on the relevant issues, is prepared to adjudicate GIS's motion.

### III. STANDARD OF REVIEW

The Federal Arbitration Act (FAA) provides a federal district court with the authority to enforce an arbitration agreement by compelling parties to arbitrate their dispute. 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28 . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.").

Section 2 of the FAA applies to any "contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract," and it provides that the written agreements to arbitrate contained in such contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has noted a strong federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

The Fourth Circuit Court of Appeals recognized the FAA's strong federal policy favoring arbitration agreements in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002), where the court stated, "A district court . . . has no choice but to grant a motion to compel arbitration where a valid

4

arbitration agreement exists and the issues in a case fall within its purview." *Id*. at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)). Because "arbitration constitutes a more efficient dispute resolution process than litigation . . . 'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" *Id*. at 500 (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989)).

"[T]here is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986) (citation omitted) (internal quotation marks omitted). "In the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where . . . the arbitration clause [is] quite broad." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).

### IV. CONTENTIONS OF THE PARTIES

GIS's primary contention is this: any question concerning the interpretation, construction, applicability, unconscionability, arbitrability, enforceability, and formation should be decided by an arbitrator, not this Court. Thus, according to GIS, the Court should grant its motion to arbitrate and dismiss this action.

GIS offers the following alternative arguments in case the Court fails to adopt its first one:

5

this Court should hold the Agreement is valid and enforceable; GIS, as an agent of TruGreen, may enforce the Agreement; Smith's claims against GIS are within the scope of the Agreement; and Smith waived the right to proceed on a class, collective, or representative basis.

Smith takes issue with GIS's contentions and counters GIS is not a party to the Agreement and is not referenced anywhere in it; GIS may not rely on the provisions of the Agreement as a third-party beneficiary; and, because the existence of a contractual agreement to arbitrate is in dispute, the Court must determine the arbitration question, not an arbitrator.

## V. DISCUSSION AND ANALYSIS

As already noted, GIS argues the Agreement mandates all issues regarding the interpretation, construction, applicability, unconscionability, arbitrability, enforceability, and formation should be decided by the arbitrator, not the Court. Smith maintains, however, that the arbitration question is for the Court to decide in the first instance. GIS has the better argument.

When the parties agree to arbitrate, as a general rule, the Court engages in a "limited review to ensure that the dispute is arbitrable–i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Glass v Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997).

But, "consistent with arbitration's contractual nature, parties may choose to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Simply Wireless, Inc v. T-Mobile US, Inc*, 877 F.3d 522, 526 (4th Cir. 2017) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, c, 68–69 (2010) (internal quotation marks omitted). "However, because empowering an arbitrator to determine arbitrability in the first

6

instance cuts against the normal rule that arbitrability disputes are for the court to resolve, a court must find by clear and unmistakable evidence that the parties have chosen to give arbitrability questions to an arbitrator." *Id*. (citation omitted) (internal quotation marks omitted).

"Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "The clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice." *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (internal quotation marks omitted).

Paragraph 15(b) of the Agreement provides the following:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any Dispute relating to the interpretation, construction, applicability, unconscionability, arbitrability, enforceability or formation of the [Agreement] including, but not limited to, any claim that all or any part of the [Agreement] is void or voidable.

Agreement ¶ 15(b). The Court is of the firm opinion this language is exactly the sort of "clear and unmistakable evidence" the *Simply Wireless* court envisioned the Court must find before deciding "that the parties have chosen to give arbitrability questions to an arbitrator." *Simply Wireless, Inc.*, 877 F.3d at 526.

Read by itself, Paragraph 15(b) appears to address only the arbitration of disputes between Smith and TruGreen. This case, however, involves whether disputes must be arbitrated between Smith and GIS, one of TruGreen's agents. For that, Paragraph 3 of the Agreement is directly on point. That portion of the Agreement provides, in pertinent part:

7

> The Company and I mutually consent to resolution under the Plan and to final and binding arbitration of all Disputes, including, but not limited to, any preexisting, past, present or future Disputes, which arise out of or are related to my application for employment . . . that I may have against its current and former . . . agents in their capacity as such . . . or that the Company may have against me[.]

Agreement ¶ 3. So, the Agreement states disputes between Smith and the Company's agents will be resolved via arbitration. And, there is no disagreement GIS acted as an agent of the Company when it conducted Smith's background check, which is the genesis of Smith's FCRA claims. Consequently, the Agreement calls for arbitration of this dispute between Smith and GIS.

Even so, Smith continues to take issue with that conclusion, contending GIS is unable to rely on the provisions of the Agreement to compel arbitration inasmuch GIS is not a party to the Agreement, GIS is not specifically referenced anywhere in the Agreement, and may not, according to Smith, rely on the provisions of the Agreement as a third-party beneficiary. These are arguments the relevant law fails to support.

It has been long-settled that "[t]he obligation and entitlement to arbitrate 'does not attach only to one who has personally signed the written arbitration provision.'" *Washington Square Sec., Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir.2000). "Well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co.,* 206 F.3d at 416–17.

In *Int'l Paper*, the Fourth Circuit noted with approval that the Second Circuit has "recognized that five theories "'aris[ing] out of common law principles of contract and agency law' could provide a basis 'for binding nonsignatories to arbitration agreements: 1) incorporation by

references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel.'" *Int'l Paper Co.*, 206 F.3d at 417 (quoting *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir.1995)).

"[A]n agent is entitled to the protection of her principal's arbitration clause when the claims against her are based on her conduct as an agent." *Grand Wireless, Inc. v. Verizon Wireless, Inc.*, 748 F.3d 1, 11 (1st Cir. 2014) (footnote omitted). Stated a different way, "[b]ecause a principal is bound under the terms of a valid arbitration clause, its agents, employees, and representatives are also covered under the terms of such agreements." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith*, 7 F.3d 1110, 1121 (3d Cir. 1993).

Applying this case law to the facts of this case, that GIS is neither a party to the Agreement nor specifically referenced anywhere in the Agreement is of no moment. The Agreement refers to GIS in the portion of the document in which Smith agreed to arbitrate "all Disputes, which arise out of or are related to my application for employment . . . that [he] may have against . . . [TruGreen's] current and former . . . agents," Agreement ¶ 3. Hence, contract principles bind Smith to the Agreement to arbitrate his claims against GIS.

Smith is also bound by principles of agency to arbitrate his dispute with GIS. That GIS was acting on behalf of TruGreen when it allegedly violated the FCRA points convincingly to the conclusion that GIS, as TruGreen's agent, is entitled to the protection of the Agreement between Smith and TruGreen, GIS's principal.

Accordingly, as it appears a valid arbitration agreement exists that would compel arbitration on the underlying dispute between the parties, the Court orders all other claims concerning the interpretation, construction, applicability, unconscionability, arbitrability, enforceability, and formation of the Agreement be decided by the arbitrator, not the Court.

Given the Court's holding, the Court need not consider the parties' remaining arguments. See *Karsten v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, 36 F.3d 8, 11 (4th Cir. 1994) ("If the first reason given is independently sufficient, then all those that follow are surplusage; thus, the strength of the first makes all the rest dicta.").

The Court now turns to GIS's argument that, if the Court grants its motion to compel arbitration, it ought to dismiss the action as opposed to staying the action. Smith posits no argument on the matter. As such, he has waived any contention to the contrary. *See Tucker v. Waddell*, 83 F.3d 688, 690 n. 1 (4th Cir.1996) (failing to present argument amounts to waiver).

The Fourth Circuit has held a dismissal of a lawsuit, instead of a stay, is an appropriate remedy when all of the issues presented in the lawsuit are arbitrable. *Choice Hotels Int., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of § 3, . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."). Accordingly, because the all the claims in Smith's suit are arbitrable, the Court is inclined to dismiss the action.

Before making a final decision on this matter, however, the Court sua sponte raised the issue with the parties of whether Smith's claims against GIS would be barred by the statute of limitations if the arbitrator, in its consideration of the interpretation, construction, applicability, unconscionability, arbitrability, enforceability, and/or formation of the Agreement, determines Smith's claims fall outside the ambit of the Agreement such that Smith needs to bring them again in this Court. In response, GIS answered it "would agree to the tolling of the statute of limitations of [Smith's] claims in the Complaint against GIS during the time period of dismissal of this action until the final resolution of the arbitrator's decision or any appeal thereof, whichever is later." Joint Response to the Court's Interrogatories ¶ 2. The Court, having been assuaged of its

concern regarding the possibility of a statute of limitations bar, will therefore dismiss the action without prejudice.

## VI. CONCLUSION

Based on the foregoing discussion and analysis, Defendant's motion to compel arbitration is **GRANTED** and the complaint is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Signed this 11th day of December, 2018, in Columbia, South Carolina.

s/ Mary Geiger Lewis<br>
MARY GEIGER LEWIS<br>
UNITED STATES DISTRICT JUDGE